**KRISS & FEUERSTEIN LLP**
360 Lexington Avenue, Suite 1200
New York, New York 10017
(212) 661-2900
(212) 661-9397 – facsimile
Jerold C. Feuerstein, Esq.
Daniel N. Zinman, Esq.
Stuart L. Kossar, Esq.
jfeuerstein@kandfllp.com
dzinman@kandfllp.com
skossar@kandfllp.com

*Attorneys for Maguire Perry LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| Nancy J. Haber, | Case No. 24-10194-dsj |
| Debtor. | Hon. David S. Jones<br>United States Bankruptcy Judge |

------------------------------------------------------------x

### *EX PARTE* APPLICATION OF MAGUIRE PERRY LLC FOR THE ENTRY OF AN ORDER PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURES DIRECTING DEBTOR TO PRODUCE DOCUMENTS AND APPEAR FOR AN EXAMINATION

TO THE HONORABLE DAVID S. JONES,
UNITED STATES BANKRUPTCY JUDGE:

Maguire Perry LLC ("Secured Creditor"), a secured creditor of the Debtor, Nancy J. Haber (the "Debtor"), in the above referenced bankruptcy case (the "Bankruptcy Case"), by and through its attorneys, Kriss & Feuerstein LLP, respectfully submits this application (the "Application") in support of its Motion (the "Motion") for the entry of an order: (i) pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2004-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules") authorizing and directing the

examination of the Debtor and the production of certain records, documents and electronic files of the Debtor and (ii) granting such further and different relief as the Court may deem just and proper. In support of this Application, the Secured Creditor respectfully states as follows:

## PRELIMINARY STATEMENT

1. Since the day the Debtor filed for Chapter 11 relief before this Court on February 25, 2024 (the "Petition Date"), she and her counsel have almost completely failed to provide responsive documentation and/or answers to the very legitimate questions presented to her by the Secured Creditor, the largest creditor of her estate by far (and also respond to the Office of the United States Trustee), which directly impact the value of the Secured Creditor's collateral in connection with a mortgage loan (the "Loan") originated to 1819 Weeks Ave. Realty Corp. ("Mortgagor"), of which the Debtor is the sole shareholder.

2. Indeed, the Debtor's instant filing was precipitated by the fact that the Mortgagor's Loan matured by its terms on May 1, 2023, and after the Mortgagor was unable to uphold its end of the bargain in connection with loss mitigation efforts extended by the Secured Creditor, a sale of the membership interests of the Mortgagor was noticed for the Petition Date which were pledged to it by the Debtor.

3. Significantly, the Mortgagor and the Debtor are embroiled in numerous pre-petition litigations, one of which (the "Tenant Litigation") involves two (2) tenants (the "Tenants") who reside in different units at the residential apartment building located the West Village of Manhattan, commonly known as and located at 47 Perry Street, New York, New York 10014 [Block 613; Lot 43] (the "Property"),[1] which Property serves as collateral in connection with the Loan. In connection with the Tenant Litigation, the Tenants allege, among other things, that the

---

[1] The Property was one of several real properties that the Debtor inherited from her father in or around 1999.

2

Mortgagor and the Debtor are liable to them for, *inter alia*, engaging in a fraudulent scheme to unlawfully deregulate their respective apartment units [*See* Leibowitz Decl. at ¶ 22]. In opposition, the Mortgagor and the Debtor, have alleged that the subject apartment units in question were properly destabilized in accordance with New York law and that they are in possession of the documentation to prove same [*See Id.*]. Notwithstanding, the docket in the Tenant Litigation reflects that neither the Mortgagor nor the Debtor have come forward with that documentary evidence [*See Id.*]. Indeed, the documentation referenced by the Mortgagor and/or Debtor directly impacts the value of the Secured Creditor's collateral for the Loan which goes to the heart of this bankruptcy filing [*See Id*].

4. Although supporting documentation was demanded of the Debtor at the initial Meeting of Creditors (the "341 Meeting") on March 3, 2024, the Debtor has completely failed to provide any such documentation as of the date hereof. In addition, at the 341 Meeting, the Debtor was unable to recall answers to the most basic of financial information regarding her estate, such as the status of a trust created by her father or why it has taken nearly 25 years to settle her father's estate.

5. Of particular concern to the Secured Creditor are certain facts relating to documentation allegedly in the possession of the Debtor that have the potential to directly and significantly impact the value of the Property. Answers to these questions will affect the administration of the Debtor's estate.

6. Based on the foregoing, this Court should grant the Motion in its entirety.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 & 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District

3

pursuant to 28 U.S.C. §§ 1408 and 1409.

8.     The statutory predicates for the relief requested herein are Bankruptcy Code Section 105, Bankruptcy Rule 2004 and Local Rule 2004-1.

## BACKGROUND

**The Debtor's Background**

9.     The Debtor is the 100% of owner of 1819 Weeks which owns the Property. [*See* Leibowitz Decl. at ¶ 5; ECF No. 16, Schedule A/B, Part 19 & 53].[2]

10.    The Debtor also has an unknown interest as in the Ira H. Testamentary Trust (the "Trust"), which is the owner of real property located at 4210 Digney Avenue, Bronx, NY 10466 (the "Digney Property" and together with the Property, collectively, the "Properties"). [*See* ; ECF No. 16, Schedule A/B, Parts 25 & 37].

11.    On November 14, 2019, two Tenants at the Property commenced an action by the filing of a summons (the "Summons") and Complaint (the "Complaint") against the Debtor and 1819 Weeks, in the Supreme Court of the State of New York, County of New York originally styled, *Benjamin Dixon and Christoph J. Meinrenken v 1819 Weeks Ave. Realty Corp. et al*, (Index No. 161138/2019) (defined hereinabove as the Tenant Litigation). The Complaint, among other things, seeks civil damages from the Debtor and 1819 Weeks on account of their alleged failure to properly destabilize two units at the Property [*See* Leibowitz Decl. at ¶ 23; Ex. N].

12.    In addition, in the Tenant Litigation, as evidenced by the annexed *Decision + Order on Motion* (the "Order") of the Supreme Court of the State of New York, County of New York entered on October 5, 2023 (Latin, J.S.C.) , the Debtor has asserted, among other things, that the Mortgagor's late registrations do not lead to an overcharge finding if a landlord lawfully increased

---

[2] "Leibowitz Decl. shall refer to the Declaration of Jason Leibowitz in support of the Motion filed simultaneously herewith.

4

the rent. *See* Order annexed hereto as Exhibit B [*See* Leibowitz Decl. at ¶ 24 ; Ex. O].

**Secured Creditor's Loan**

13. On October 20, 2022, Fairbridge Credit LLC ("Original Lender") originated the Loan in the principal amount of $4,600,000.00, at which time, 1819 Weeks, duly executed, acknowledged and delivered a Consolidated, Secured Promissory Note (the "Note") along with various other loan documents [*See* Leibowitz Decl. at ¶ 5 ; Ex. A].

14. On October 20, 2022, as security for the Note, 1819 Weeks duly executed, acknowledged and delivered to Original Lender, a Consolidation, Extension and Modification Agreement (the "Mortgage") in the amount of $4,600,000.00 that was recorded in the Office of the City Register of the City of New York, County of New York (the "Register's Office") on November 22, 2022 under City Register File Number ("CRFN") 202200043592, encumbering the Property [*See* Leibowitz Decl. at ¶ 6 ; Ex. B].

15. On October 20, 2022, as further security for the Note, the Debtor, individually, duly executed, acknowledged and delivered to Original Lender, that certain Guaranty (the "Guaranty"), wherein the Debtor guaranteed the repayment of all sums due under the Loan [*See* Leibowitz Decl. at ¶ 7 ; Ex. C].

16. On October 20, 2022, as further security for the Loan, the Debtor duly executed, acknowledged and delivered to Original Lender, that certain Loan Agreement (the "Loan Agreement") [*See* Leibowitz Decl. at ¶ 8; Ex. D].

17. On October 20, 2022, as further security for the Loan, Debtor duly executed, acknowledged, and delivered to Original Lender an Ownership Interests Pledge and Security Agreement (the "Pledge Agreement"), whereby pursuant to the Pledge Agreement, Original Lender was granted (as further described in the Pledge Agreement) a first priority security interest

5

in favor of Original Lender in all Debtor's right, title and interest in 1819 Weeks (the "Pledged Collateral") [*See* Leibowitz Decl. at ¶ 9, Ex. E].

18.  Original Lender further perfected its security interest against the Debtor, Property and/or Pledged Collateral by filing a UCC-1 Financing Statement (the "UCC-1") with the Register's Office on December 9, 2022, which was recorded as CRFN 2022000446118 [*See* Leibowitz Decl. at ¶ 10; Ex. F].

19.  On or about December 15, 2022, Original Lender assigned to Fairbridge Strategic Capital LLC ("Fairbridge Strategic") the Note, the Mortgage, and all other documents evidencing the Loan pursuant to that certain Assignment of Mortgage (the "Fairbridge Assignment"), which was recorded in the Register's Office on December 21, 2022 as CRFN 202200457429 [*See* Leibowitz Decl. at ¶ 14, Ex. I]. The Note was also endorsed to Fairbridge Strategic as evidenced by the allonge payable to Fairbridge Strategic (the "Fairbridge Allonge") [*See* Leibowitz Decl. at ¶ 11 ; Ex. G].

20.  On or about December 15, 2022, Original Lender assigned to Fairbridge Strategic the UCC-1 pursuant to a UCC-3 Financing Statement (the "Fairbridge UCC Assignment"), which was recorded in the Register's Office on December 21, 2022 as CRFN 2022000457431[*See* Leibowitz Decl. at ¶ 12; Ex. H ].

21.  On or about December 15, 2022, Fairbridge Strategic Capital LLC further assigned, the Note, Mortgage and all other documents evidencing the Loan to the Secured Creditor pursuant to that certain n Assignment of Mortgage (the "Secured Creditor Assignment"), which was recorded in the Register's Office on December 21, 2022 as CRFN 2022000457432 [*See* Leibowitz Decl. at ¶ 13 ; Ex. I].

22.  On or about December 15, 2022, Fairbridge Strategic Capital LLC ("Fairbridge

Strategic") assigned to Secured Creditor the UCC-1 pursuant to a UCC-3 Financing Statement (the "Secured Creditor UCC Assignment"), which was recorded in the Register's Office on December 21, 2022 as CRFN 2022000457434 [*See* Leibowitz Decl. at ¶ 14 ; Ex. J].

23. The Note was also endorsed to the Secured Creditor as evidenced by the allonge payable to Secured Creditor (the "Secured Creditor Allonge" and together with the Fairbridge Allonge, collectively "Allonges") [*See* Leibowitz Decl. at ¶ 15 ; Ex. A].

24. In addition, on December 15, 2022, Fairbridge Strategic assigned to Secured Creditor the Note, the Mortgage, the Guaranty, the Pledge Agreement, the UCC-1, and all documents evidencing the Loan pursuant to that certain Omnibus Assignment of Loan Documents (the "Omnibus Assignment") [*See* Leibowitz Decl. at ¶ 16 ; Ex. K].

25. Secured Creditor is the owner and holder of Note with Allonges firmly affixed thereto, the Mortgage, the Guaranty, the Loan agreement, the Pledge Agreement, the UCC-1, the Fairbridge Assignment, the Secured Creditor Assignment, the Omnibus Assignment and all other documents evidencing the Loan (collectively, the "Loan Documents") [*See* Leibowitz Decl. at ¶ 17].

**The Default and UCC Sale**

26. 1819 Weeks defaulted under the Loan Documents by, amongst other things: (i) failing and omitting to pay the property taxes which came due in connection with the Mortgaged Premises on January 1, 2023 (the "Tax Default") and (ii) failing and omitting to pay in full all obligations under the Loan Documents on or before the Maturity Date of May 1, 2023 (the "Maturity Default" and together with the Tax Default, collectively, the "Defaults") [*See* Leibowitz Decl. at ¶ 18].

27. Thereafter, the Secured Creditor entered into that certain Forbearance Agreement

(the "Forbearance Agreement") with the Debtor, through which the Secured Creditor agreed, *inter alia*, not to conduct a sale in connection with the Pledge for a period of ten (10) months, in order to give the Debtor a meaningful opportunity to either refinance and/or sell the Property. Notwithstanding, the Debtor defaulted under the terms of the Forbearance Agreement when she failed to accomplish either objective during the term of the forbearance agreement or demonstrate that she had made any meaningful progress in connection therewith [*See* Leibowitz Decl. at ¶ 19, Ex. L].

28. In addition, during October 2024, the Secured Creditor also engaged in an in-person meeting with Debtor and her counsel to discuss loss mitigation options. During that exchange, the Debtor could not recall basic facts about the Trust and agreed to provide copies of the Trust documents to Secured Creditor [*See* Leibowitz Decl. at ¶ 20]. However, no such documentation was ever provided to Secured Creditor.

29. At the expiration of the Forbearance Agreement, and the Debtor's complete failure to provide requested documentation and/or any meaningful progress towards resolving the default, the Secured Creditor caused to be transmitted a Notice of Sale (the "Notice of Sale") and Notification of Disposition of Collateral (the "Notification of Disposition" and together with the Notice of Sale, collectively, the "UCC Sale Documents") scheduling a UCC Sale for February 5, 2024, through which of all of the membership interests of the Debtor in 1819 Weeks (the "UCC Sale") would be sold [*See* Leibowitz Decl. at ¶ 21, Ex. M].

**The Bankruptcy Case**

30. On the Petition Date, the same day as the UCC Sale, the Debtor filed a voluntary petition (the "Petition") for relief under Chapter 11, staying the UCC Sale [ECF No. 1].

31. The Debtor continues to operate and manage her assets as a debtor-in-possession

8

under Bankruptcy Code Sections 1107(a) and 1108.

32. On March 4, 2024, at the Meeting of Creditors held pursuant to Bankruptcy Code Section 341(a), the Debtor testified, among other things:

- The Debtor could not recall the status of the Trust and has not provided a copy of the Trust to Secured Creditor.

- The Debtor was unable to recall information about the Property including (but not limited to) whether there was any rent-stabilization or efforts to remove the rent-stabilization.

- The Debtor advised she was providing approximately $6,000-$7,000 per month to her daughter in financial support, to the detriment of the Secured Creditor, none of which is reflected in her Schedules and/or Statement of Financial Affairs.

- The Debtor claimed the Bankruptcy Case was filed because of issues relating to the Property and the Debtor advised that her father handled business affairs until his death in 1999. Thereafter, her ex-husband (Michael Haber) handled financial affairs and allegedly incurred the Loan to among other things, pay delinquent real estate taxes but claimed some Loan proceeds remain unaccounted for.

33. In addition, at the Meeting of Creditors, Secured Creditor and Office of the United States Trustee (the "UST") demanded Debtor (among other things) a copy of the Trust and documents relating to whether there was any rent-stabilization or efforts to remove the rent-stabilization.

34. On March 14, 2024, an initial status conference was held.

35. On April 8, 2024, a continued Meeting of Creditors was held which Debtor was directed to provide outstanding documents on or before April 10, 2024.

36. The continued Meeting of Creditors is scheduled for April 18, 2024.

37. To date, the Debtor has completely failed to provide the items demanded at the Meeting of Creditors to either Secured Creditor and/or the UST.

**RELIEF REQUESTED**

38. Bankruptcy Rule 2004(a) provides, in relevant part, that "[o]n motion of any party

9

in interest, the court may order examination of any entity." Pursuant to Bankruptcy Rule 2004(b), a party in interest, such as Secured Creditor with a Loan where the Debtor is a guarantor, with claims to, among other things, relating to potential dissipation of Loan proceeds, condition of the Properties, may request "acts, conduct, or property, or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate or the debtor's right to discharge" Fed. R. Bankr. P. 2004(b).

39. The purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved.'" *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (quoting *Cameron v. United States*, 231 U.S. 710, 717 (1914)). The scope of a Rule 2004 examination is very broad and can be in the nature of a fishing expedition." *Id*. (citing *Chereton v. United States*, 286 F.2d 409, 41 (6th Cir. 1961), cert. denied, 366 U.S. 924 (1961); *In re Fearn*, 96 B.R. 135, 137 (Bankr. S.D. Ohio 1989); *In re Vantage*, 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983)). *See also In re Madison Williams Co., LLC*, No. 11-15896, 2014 WL 56070 at *3 (Bankr. S.D.N.Y. Jan. 7, 2014). In fact, discovery provided for under Bankruptcy Rule 2004 is "broader discovery than is available under the Federal Rules of Civil Procedure." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Bernard Madoff*), 2014 WL 5486279, at *2 (citing *In re Recoton Corp*., 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004)).

40. Here, Secured Creditor legitimately seeks information to: (i) understand income and expenses relating to the Trust; (ii) understand whether the Debtor properly destabilized any units at the Property, the value of which directly impacts the Debtor's ability to reorganization before this Court; (iii) better understand the Debtor's income and expenses and the manner in which the Debtor has been funneling money to her family members at the expense of the Secured

10

Creditor; and (iv) better understand the possible improper dissipation of assets from the Debtor's estate.

41. By and through this application, the Secured Creditor also seeks information, *inter alia,* relating to the pre-petition financial history of the Debtor, as well as the post-petition ability of the Debtor, in connection with the Debtor's ability to proceed with a liquidation of possible assets to satisfy Secured Creditor and other creditors.

42. Secured Creditor should be afforded the opportunity to examine the Debtor with respect to her financial history, assets, liabilities, corporate interests and related real property. In addition, the oral examination of the Debtor under oath, is necessary in order to investigate the Debtor's pre-petition and post-petition financial affairs.

43. As such, the requested discovery is directly related to the "acts, conduct or property or to the liabilities of the Debtor's estate" and is appropriate under Bankruptcy Rule 2004.

## RESERVATION OF RIGHTS

44. Secured Creditor expressly reserves its right to amend or supplement this Motion, to introduce evidence supporting this Motion at the hearing on the Motion as it deems advisable.

## PROPOSED ORDER, NOTICE, AND PRIOR REQUEST

45. Secured Creditor respectfully requests his Court substantially in the form of the proposed order (the "Proposed Order") annexed hereto as **Exhibit "P"** compelling the examination under oath of the Debtor for the production of certain records and documents including: (i) production of the documents specified in the Subpoena and First Demand for the Production of Documents and Information To Debtor (the "Document Demand") (a copy of which is annexed hereto as **Exhibit "Q"** and (ii) directing the Debtor appear for an examination pursuant to the Deposition Notice (the "Deposition Notice") and inquire on the items listed therein (the "Rule

11

2004 Topics") annexed hereto as **Exhibit "R"**.

46. This application is being brought on a limited *ex parte* basis.

47. No previous application for the relief sought herein has been filed before this Court in this case.

**WHERFORE,** the Secured Creditor respectfully requests the entry of an Order granting the Motion in its entirety together with such further and different relief as the Court may deem just and proper.

Dated: New York, New York
April 12, 2024

    KRISS & FEUERSTEIN LLP
*Attorneys for Maguire Perry LLC*

*s/Jerold C. Feuerstein*_____
Jerold C. Feuerstein, Esq.
Daniel N. Zinman, Esq.
Stuart L. Kossar, Esq.
360 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 661-2900
(212) 661-9397 fax
jfeuerstein@kandfllp.com
dzinman@kandfllp.com
skossar@kandfllp.com

4871-6904-2102, v. 1